The Ch;EF Justice
delivered the opinion
This is a controversy in relation to conflicting land claims The appellants, who were defendants in the court below, rely upon their elder, legal title, to coerce a surrender, of which the appellees filed their bill asserting their equitable right in virtue of the following entry :
“ February 4tb, 1783, Alexander M'Kinnev enters 500 “ acres of land,. .on treasury warrant No 8403, lying oo “ the waters of the north fork of Elkhorn, bounded by a “ survey of Josiab Watson’s of 4000 acres on the north, “ on the east by an entry of Samuel M’Miiiin’s, on the “ west by an entry of Christopher Greenup’s, and on part “ of the south line by an entry of Jane Alligree’s, to ex- “ tend out between Greenup’s and Alligree’s, southwardly, for quantity.”
The entry of M’Millin calh for Watson’s entry of 4000 acres. The entry of Alligree calls for that of M’Miiiin’s, and the entry of Greenup calls for an *ntry in the name of John Waters, which calls for that of Watson, so that the whole of them depends upon the entry of Watson. V\ at-son’s entry of 4000 acres was made the 19th of Dec. 1782, and calls to lie “on the waters of the north fork of Eik- *569 A* horn, ttfo miles west of the clay lick that is on the <$• ** riding ridge between Licking and the north fork of Elfe- “ born, beginning at a sugar tree and mulberry, standing on “ the west side of the branch, both marked S. ¡Vi.; froát “ thence east, 800 poles; thence to the beginning.”
A eni cannot be^ sustained 0bjects to be found madif-f®renl, Posi‘ the entry iri-dicates, and riety.
This entry was called in question in the case of Campbell vs. Beatty, decided at the fail term 1820 of this court, and was there held to be invalid, as well because the clay Hofei on the dividing ridge between Licking and the north fork of Elkhorn was not identified with sufficient certainty, as on account of the insuperable difficulty a subsequent locator would have bad to encounter in attempting to ascertain the marked trees, supposing the clay lick, claimed by the appellees, to be the one intended by the entry.
With respect to the clay lick, however, the state of the proof in the present case is materially different from that which was exhibited in the case of Campbell vs. Beatty. The lick at Halford’s, which is claimed by the appellees as the one intended By the entry, ¡3 proven by the most indisputable testimony to have been generally known at the date of the entry in its vicinity by the name of the clay lick, on the dividing ridge between Licking and the north fork of Elkhorn; and although an attempt has been made in this case, as there was in the former, to establish the validity of a lick at Strother’s by the spine name, yet the testimony adduced for that purpose is much weaker in this than it was in that case, and when taken in connection with the opposing evidence, is wholly inconclusive and unsatisfactory.
But admitting the lick, claimed by the appellees, to be the one intended by the entry, still the. difficulty which a subsequent locator would have had in ascertaining the marked trees, appears from the proof in this case to be as great as it did in the case of Campbell vs. Beatty. For the marked trees are not shewn to have possessed any thing like notoriety, and consequently they could Only ,have been found, by a subsequent locator, from the indications which the entiy affords of their position; but in pursuing those indications, be would be necessarily led to search for the trees soutbardly down the branch.from the termination of the two miles west from the lick; for as the land is described as lying west of the lick, and north of a west line extended from the marked trees, according to the obvious im port of the entry, the trees ought to be found on the *570 branch in a South direction from the termination of twit militó » west course from the lick. But instead oFbeing there, their actual position is northwardly up the branch about t4u poles from the two miles west of the lick; ar.i instead of being on the margin of the branch, where a subsequent locator would look for them, they are some distance from it, and the marks are not shewn to have been discov-érable by him from the branch, even though his vision were directed to the trees. An énlry thus vaguely and inconsistently describing its objects of location, cannot, according to the tenor of the decisions in analogous cases, be deemed valid.
An entry ca'ling- for Sic vey, cannot be sustained.unless the boundaries of the su tey are shewn, tho’ a survey w.s ac lualiy math : sh wing the en!i". oil which such survey was math, is not enough.
But there is still a further objection to the validity of the entry in question in this case; for it Calls, not for 'Vat-son’s entry, but his survey, and there is no survey produced. There is some parol evidence conducing to shew that a survey had been made on Watson’s entry, prior to' the date of the entry now in question; but the' proof does not shew where the boundaries of the survey were; and as those boundaries must control the figure of the entry in question, the absence of the survey, and of all proof of the identity of its boundaries, must be fatal to the entry.
The decree of the circuit court must be reversed with costs, and the cause remanded that the bill may be dismissed with coats.